IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BUTTE DIVISION

| | |
|---|---|
| RAQUEL CORREA-GREER, individually, and as the Personal Representative of JUAN ANTONIO CORREA, a Protected Person,<br><br>Plaintiff,<br><br>vs.<br><br>SWEETWATER BUTTE OPCO, LLC, d/b/a CONTINENTAL CARE AND REHABILITATION, and INTERMOUNTAIN HEALTH CARE, INC., d/b/a ST. JAMES HOSPITAL,<br><br>Defendants. | CV 25-26-BU-TJC<br><br>**ORDER** |

Plaintiff Raquel Correa-Greer, individually and as the Personal Representative of the Estate of Juan Antonio Correa ("Plaintiff"), brings this action against Defendants Sweetwater Butte Opco, LLC, doing business as Continental Care and Rehabilitation ("Continental"), and St. James Healthcare, doing business as Intermountain Health St. James Hospital[1] ("St. James") (collectively "Defendants").

Presently before the Court is St. James' Motion to Dismiss (Doc. 30), which is fully briefed and ripe for the Court's review. Having considered the parties'

---

[1] St. James states that it was incorrectly named in the caption of the Amended Complaint as Intermountain Health Care, Inc. d/b/a St. James Hospital.

1

submissions, the Court finds the motion should be **GRANTED in part, and DENIED in part**, as set forth below.

## I.    BACKGROUND[2]

Juan Correa ("Juan") was a disabled 82-year-old who had been diagnosed with Parkinson's disease and dementia, with a history of behavior disturbances and hypertension.  Juan died on July 17, 2025, and last resided at Pioneer Care and Rehabilitation in Dillon, Montana.  Plaintiff Raquel Correa-Greer is Juan's daughter, and she was his guardian and duly appointed agent under a Power of Attorney.

In June 2022, Juan was admitted to Continental for occupational therapy, physical therapy, and strength training following a hospitalization at St. James. Plaintiff alleges that while he was in the care of Continental, Juan was denied proper care and supervision, and suffered from multiple falls, extreme pressure wounds, weight loss, and extreme anxiety and confusion.

In June 2023, Juan was treated by St. James for complications arising from the alleged negligent care he received at Continental.  Plaintiff alleges that after receiving his treatment, St. James attempted to discharge Juan into Plaintiff's care, but she and her husband disagreed with that decision.  Plaintiff asserts that St.

---

[2] For the purposes of this motion, the Court accepts as true the allegations contained in the First Amended  Complaint.  *Wyler Summit P'ship v. Turner Broadcasting Sys, Inc.*, 135 F.3d 658, 661 (9th Cir. 1998).

James disregarded her instructions as Juan's guardian, and interfered with her legal authority as Juan's Power of Attorney by filing a Petition for Temporary Limited Guardianship and Conservatorship.  Plaintiff indicates the reason for St. James' actions were purely financial, as St. James asserted Juan cost the hospital thousands of dollars a day and diverted valuable resources.  Plaintiff alleges St. James made false statements in the court filings in an effort to force her to take Juan from St. James to her home.  Plaintiff further asserts St. James' actions interfered with her rights as Juan's caregiver, and caused her great emotional distress.  Plaintiff does not allege, however, that any care and treatment provided by St. James was substandard, or that Juan suffered any damage as a result thereof.

Plaintiff instituted this action against Continental in the Montana Second Judicial District Court, Silver Bow County on December 30, 2024.  (Doc. 5.) Continental removed the action to this Court on March 6, 2025.  (Doc. 1.)  On September 8, 2025, Plaintiff filed an Amended Complaint, naming St. James as an additional Defendant.  (Doc. 27.)  In the Amended Complaint, Plaintiff asserts four claims in her individual capacity against St. James: (1) tortious interference (Count VI); (2) abuse of process (Count VII); (3) negligent misrepresentation (Count VIII); and (4) intentional infliction of emotional distress (Count IX).  (*Id.*)

St. James now moves to dismiss under Rule 12(b)(1) and 12(b)(6), arguing Plaintiff's claims should be dismissed because (1) Plaintiff failed to first present

her claims against St. James to the Montana Medical Legal Panel; (2) the claims are barred by the two-year statute of limitations; and (3) Plaintiff fails to allege facts sufficient to support a plausible claim.[3]

## II.    LEGAL STANDARDS

Rule 12(b)(1) of the Federal Rules of Civil Procedure governs motions to dismiss for lack of subject matter jurisdiction.  How the court treats the complaint's allegations when considering a motion to dismiss under Rule 12(b)(1) depends on whether the motion is a "facial" or "factual" challenge.  *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  In a factual attack, where the defendant contests the truth of the plaintiff's factual allegations, the district court may look beyond the complaint to extrinsic evidence.  *Leite v. Crane Co.*, 749 F.3d 1117, 1121–22 (9th Cir. 2014); *Safe Air for Everyone*, 373 F.3d at 1039. *See also Ito v. Stanford Univ.*, 2011 WL 2847433, at *1 (N.D. Cal. July 18, 2011). A facial attack on subject matter jurisdiction, however, is one that asserts that the jurisdictional allegations in the complaint are insufficient on their face.  *Safe Air*

---

[3] In its opening brief, St. James asks the Court to take judicial notice of proceedings and statements made in *In the Matter of the Guardianship and Conservatorship of Juan Antonio Correa*, Case No. DG-47-2023-0000017-GC (Mont. 2d Jud. Dist. Ct.).  St James has not, however, provided the Court with any documents from the guardianship proceeding.  As St. James noted, the petition for guardianship was filed under seal in July 2023 in state court, and is therefore, not readily accessible by this Court.  The Court, therefore, declines to take judicial notice of state court records that have not been presented for consideration.

*for Everyone*, 373 F.3d at 1039.  Thus, the district court resolves a facial challenge as it would a motion to dismiss under Rule 12(b)(6) i.e., "[a]ccepting the plaintiff's allegations as true and drawing all reasonable inferences in the plaintiff's favor." *Leite*, 749 F.3d at 1121.

Dismissal under Rule 12(b)(6) is proper when the pleading either "(1) lacks a cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable legal theory." *Zixiang Li v. Kerry*, 710 F.3d 995, 999 (9th Cir. 2013) (quoting *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008)).  The Court evaluates Rule 12(b)(6) motions to dismiss in light of Rule 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief."  While "detailed factual allegations" are not required, Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations and citations omitted).  "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do...." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quotations and citations omitted).  Nor does a pleading "suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 557).

To survive a motion to dismiss, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id*. (citing *Twombly*, 550 U.S. at 570). A claim is plausible on its face when the facts pled "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). The claim need not be probable, but there must be "more than a sheer possibility that a defendant has acted unlawfully." *Id*. Facts that are "merely consistent with" a defendant's liability fall short of this standard. *Id*. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Id*. at 679.

## III.    DISCUSSION

### A.    Rule 12(b)(1) Lack of Subject Matter Jurisdiction - Whether the MMLP Applies to Plaintiff's Claims Against St. James

St. James argues the gravamen of Plaintiff's claims arise out of St. James' discharge process, and therefore, are based on medical malpractice. As a result, St. James argues Plaintiff was required to present her claims to the Montana Medical Legal Panel ("MMLP"). St. James asserts that because Plaintiff did not present her claims to the MMLP, this Court does not have subject matter jurisdiction.

Plaintiff counters that her claims against St. James are independent, non-medical tort claims, and therefore, fall outside the MMLP's jurisdiction.

The Montana Medical Legal Panel Act ("the Act") "is meant to screen certain professional negligence – i.e., malpractice – claims by subjecting them to panel review prior to initiation of a district court action."  *Estate of Athy v. EVI Kalispell, LLC*, 582 P.3d 598, 604 (Mont. 2026).  *See also* Mont. Code Ann. § 27-6-102 ("The purpose of this chapter is to prevent where possible the filing in court of actions against health care providers and their employees for professional liability in situations where the facts do not permit at least a reasonable inference of malpractice and to make possible the fair and equitable disposition of such claims against health care providers as are or reasonably may by well founded.").

The Act, therefore, instructs that "all malpractice claims or potential claims against healthcare providers" are subject to pre-filing review by the MMLP.  Mont. Code Ann. §§ 27-6-105; 27-6-701.  The Act defines a "malpractice claim" as follows:

> "Malpractice claim" means a claim or potential claim of a claimant against a health care provider for medical or dental treatment, lack of medical or dental treatment, or other alleged departure from accepted standards of health care that proximately results in damage to the claimant, whether the claimant's claim or potential claim sounds in tort or contract, and includes but is not limited to allegations of battery or wrongful death.

Mont. Code Ann. § 27-6-103(5).  A "health care provider" under the Act "means a physician, a dentist, a podiatrist, or a health care facility," which includes a hospital.  Mont. Code Ann. § 27-6-103(3).

The MMLP Rules of Procedure further define a "claimant" as:

The person (or persons) who was the Patient alleged to have been injured by Malpractice or who is the legally authorized personal representative of the Patient, if the Patient is legally unable to bring a claim on behalf of himself or herself, or is a person who is permitted by law to recover for injuries alleged to be cause by Malpractice to a Patient. If the Patient is deceased, a "Claimant" is the person legally authorized to act on behalf of the deceased Patient and/or on behalf of those individuals permitted to assert a claim of Malpractice on behalf of the deceased Patient or themselves.

Mont. Med. Legal Panel Rules of Proc. Rule 1.

"Medical malpractice is a particular species of professional negligence applicable to health care providers." *Kipfinger v. Great Falls Obstetrical & Gynecological Assocs.*, 525 P.3d 1183, 1195 (Mont. 2023). "Compared to ordinary negligence claims, '[a]llegations of breach of duty involving medical judgment, diagnosis, or treatment indicate that a claim is for medical malpractice.'" *Estate of Athy*, 582 P.3d at 608. Also, unlike ordinary negligence, the standard of care and a departure therefrom for medical malpractice claims generally must be established by expert testimony. *Id.* at 604; *Selensky-Foust*, 510 P.3d at 82.

The question of whether Plaintiff's claims are medical malpractice claims subject to the MMLP depends on the gravamen of the action. *Estate of Athy*, 582 P.3d at 608. To determine the gravamen of an action, courts look "to the nature of the acts alleged by the plaintiff, as opposed to the manner in which the complaint is

8

framed." *Saucier v. McDonald's Rests. of Mont., Inc.*, 179 P.3d 481, 493 (Mont. 2008). "[A] plaintiff cannot, simply by virtue of mislabeling a claim for relief, change the gravamen of the action and secure a longer period of limitation." *H&H development, LLC v. Ramlow,* 272 P.3d 657, 661 (Mont. 2012) (citing *Guest v. McLaverty*, 138 P.3d 812, 815 (Mont. 2006)). *See also Selensky-Foust v. Mercer*, 510 P.3d 78, 82 (Mont. 2022) (holding that the gravamen of the claim (medical malpractice) not the label attached (general negligence) controlled the statute of limitations period for the claim).

Here, Plaintiff brings four tort claims in her individual capacity based on St. James' actions after it determined Juan could be discharged from the hospital. None of Plaintiff's claims are based on the medical treatment or lack of medical treatment that Juan received. Thus, for Plaintiff's claims to fall within the definition of "medical malpractice" under the Act, the claims must be based on some "other alleged departure from accepted standards of health care that proximately results in damage to the claimant."

St. James argues Plaintiff's claims should be construed as being based on its medical determination Juan could be discharged, and to accomplish that, St. James took steps to secure a temporary guardianship over Juan. But accepting Plaintiff's allegations as true, and drawing all reasonable inferences in her favor, Plaintiff's claims do not appear to be based on St. James' medical decision to discharge Juan.

Plaintiff does not allege any "breach of duty involving medical judgment, diagnosis, or treatment," which would indicate her claims sound in medical negligence. *Estate of Athy*, 582 P.3d at 608   Rather, the gravamen of Plaintiff's claims is based on St. James' actions directed toward Plaintiff, and her position and authority as Juan's guardian and Power of Attorney.  Further, the alleged damage resulted to Plaintiff, and not to the patient, Juan.

The Montana Supreme Court has recognized that not all claims against a hospital sound in medical malpractice, and other causes of action may be available to address non-medical aspects of health-related services. *Estate of Athy*, 582 P.3d at 610; *Selensky-Foust*, 510 P.3d at 83; *Brookins v. Mote*, 292 P.3d 347, 359-60 (Mont. 2012).  The Court has distinguished between "conduct by health-care providers in the 'actual practice' of the profession," and "those acts or practices in the conduct of the entrepreneurial, commercial, or business aspects of running a hospital." *Brookins v. Mote*, 292 P.3d at 360.

In *Estate of Athy*, for example, the representative of the estate of a resident of a long-term care facility brought numerous claims against the facility following her death. *Estate of Athy* 582 P.3d at 602.  The plaintiff alleged claims for wrongful death, survival, negligence, negligent and intentional infliction of emotional distress, elder abuse, unjust enrichment, and rescission of contract. *Id.* The district court concluded all the claims were medical malpractice claims. *Id.* at

10

603.

On appeal, the Montana Supreme Court reversed, finding the claims for unjust enrichment and contract rescission were not medical malpractice claims. *Id.* at 610. The Court noted the unjust enrichment and contract rescission claims did not turn on the adequacy of medical judgment or professional care, but were rather based on the defendant's general business practices. *Id.* In contrast, the Court found the other claims were premised upon the care the resident received and were thus medical malpractice claims. *Id.* at 609. *See also Szymborski v. Spring Mtn. Treatment Ctr.*, 403 P.3d 1280, 1285-86 (Nev. 2017) (holding that claim against treatment center for discharging a patient in a taxi with only enough money to get to his father's house and without informing the father, was not a medical malpractice claim because it did not involve medical judgment, treatment, or diagnosis, and would not require medical expert testimony at trial).

Here, Plaintiff alleges St. James pursued the temporary guardianship for purely financial reasons. Plaintiff alleges St. James asserted that Juan's care cost the hospital thousands of dollars a day, and therefore, sought to obtain a replacement guardian who would acquiesce to St. James' financially motivated desires. Thus, Plaintiff's claims against St. James concern the hospital's commercial or business tactics, rather than its provision of medical care. As such, Plaintiff's claims are not medical malpractice claims because they are not based on

"an alleged departure from accepted standards of health care." Mont. Code Ann. § 27-6-103(5).

Additionally, Plaintiff's claims do not meet the definition of "medical malpractice" under the Act because Plaintiff is not a "claimant." Under the definition of "claimant," Juan would be a claimant for any claims arising out of the medical care he received as a patient. Mont. Med. Legal Panel Rules of Proc. Rule 1. Plaintiff could qualify as a "claimant" in her capacity as a Juan's personal representative, for any claims brought on his behalf to recover for injuries caused by malpractice to him as the patient. Here, however, Plaintiff's claims are not based on any alleged injury to Juan, but rather are based on her own personal injuries.

Accordingly, Plaintiff's claims against St. James are not medical malpractice claims subject to the MMLP. St. James' Motion to Dismiss under Rule 12(b)(1) will, therefore, be denied.

### B.    Rule 12(b)(6) Failure to State a Claim

#### a.    Statute of Limitations

St. James argues Plaintiff's claims are barred by the two-year statute of limitations applicable to medical malpractice actions. Mont. Code Ann § 27-2-205(1). For the reasons discussed above, however, the Court finds Plaintiff's claims are not medical malpractice claims. Accordingly, the two-year statute of

limitations provided by § 27-2-205(a) is inapplicable.

### b.    Tortious Interference (Count VI)

Montana law recognizes two intentional interference tort theories: (1) "intentional interference with prospective economic advantage," and (2) "intentional interference with contractual relations." *Maloney v. Home & Inv. Ctr., Inc.*, 994 P.2d 1124, 1132 (Mont. 2000) (citing *Morrow v. FBS Ins. Mont.-Hoiness Labar, Inc.*, 749 P.2d 1073, 1076 (Mont. 1988)).  Both torts require the plaintiff to show the following four elements:

> (1) an intentional and willful act;
> (2) calculated to cause damage to the plaintiff's business;
> (3) with the unlawful purpose of causing damage or loss, without right or justifiable cause on the part of the actor; and,
> (4) the act results in actual damage or loss.

*Wingfield v. Dep't of Public Health and Human Servs.*, 463 P.3dd 452, 454 (Mont. 2020).  "The key difference between the two tort theories is that unlike intentional interference with contractual relations, intentional interference with either 'business relations' or 'prospective economic advantage' does not require that a contract exist between any of the involved parties.  Rather, the focus of the legal inquiry is on the intentional acts of the 'malicious interloper' in disrupting a business relationship." *Maloney*, 994 P.2d at 1132.

Here, Plaintiff alleges St. James tortiously interfered with her "contractual and fiduciary relationship with Juan." (Doc. 27 at ¶ 76.)  As plead, Plaintiff fails to

state a claim for interference with contractual relations.  First, Plaintiff has not identified any valid contract upon which the claim is based.  To the extent she is relying on the Power of Attorney, her claim fails because "[a] power of attorney is nothing more than an instrument in writing authorizing another to act as ones agent."  *McLaren Gold Mines Co. v. Morton*, 224 P.2d 975, 979 (Mont. 1950).  Thus, Plaintiff's tortious interference claim cannot be based on the Power of Attorney.

Second, Plaintiff has not alleged the existence of a business relationship necessary for a claim under the "intentional interference with prospective economic advantage" tort theory.  Rather, it appears Plaintiff's claim is solely based on St. James' alleged interference with her caregiver and power of attorney relationship with Juan.  Plaintiff does not allege any economic relationship, or that she was "pursuing reasonable and legitimate prospects of entering such a relationship."  *Maloney*, 994 P.2d at 225.  Plaintiff does not cite, and the Court has not found, any authority to support application of tortious interference to circumstances involving powers of attorney or caregiver relationships.  Therefore, the Court finds there is no basis under existing Montana law to support Plaintiff's theory of tortious interference with prospective economic advantage.

Accordingly, St. James' motion will be granted as to Plaintiff's claim for tortious interference in Count VI.

14

      **c.**      **Abuse of Process (Count VII)**

Under Montana law, a plaintiff alleging abuse of process must prove: (1) "a willful use of process not proper in the regular conduct of the proceeding;" and (2) "that the process was used for an ulterior purpose." *Spoja v. White*, 317 P.3d 153, 157 (Mont. 2014).  The legal process itself does not have to be unlawful to support an abuse of process claim.  Rather, "[t]he legal process must be 'put to a use perverted beyond its intended purpose.'" *Salminen v. Morrison & Frampton, PLLP*, 339 P.3d 602, 610 (Mont. 2014) citing *Brault v. Smith,* 679 P.2d 236, 240 (1984).  The Montana Supreme Court has explained that "[a]n abuse of process may occur when a party uses process to coerce another to 'do some collateral thing [that he] could not be legally and regularly compelled to do.'" *Id.* citing *Judd v. Burlington Northern,* 186 P.3d 214. 217 (Mont. 2008).

In *Hopper v. Drysdale,* 524 F.Supp. 1039 (D. Mont. 1981), for example, the court found the plaintiff had stated a claim for abuse of process where the defendants had legally subpoenaed him to appear at a deposition in one case so that he could be arrested on a contempt citation that had been issued in a separate case. Neither the deposition notice, nor the arrest warrant, were unlawfully issued. *Id.* at 1042.  Rather, the issue was whether the plaintiff's deposition had been noticed for an ulterior motive. *Id.*  The court determined that the plaintiff had alleged the essential elements of the tort of abuse of process.  The court made clear, however,

that whether the defendants' conduct in fact constituted abuse of process was "factual in nature and hence, remains to be determined by the trier of fact." *Id.* at 1042.

In this case, the Court finds Plaintiff has plausibly alleged an abuse of process claim. Plaintiff alleges St. James used process – filing a Petition for Temporary Limited Guardianship and Conservatorship – to force Plaintiff to take Juan from St. James to her home or to displace her as decision-maker for Juan, for the purpose of furthering its financially motivated interests. (Doc. 27 at ¶¶ 23, 25, 80-84.) Thus, even if the temporary guardianship was lawfully obtained, if the guardianship was used for the ulterior purpose of coercing Plaintiff to remove Juan for St. James's financial benefit, Plaintiff has stated a plausible claim for abuse of process.

The Court cautions, however, that it does not find St. James did, in fact, abuse process. Rather, the Court is only finding that at this stage of the proceedings, under the applicable Rule 12(b)(6) standard, that Plaintiff has stated a plausible claim for relief. Thus, the Court does not find dismissal of the abuse of process claim is appropriate at this early stage of the proceedings.

Accordingly, St. James' motion to dismiss will be denied as to Count VII.

### d.     Negligent Misrepresentation (Count VIII)

Under Montana law, a claim for negligent misrepresentation requires a

plaintiff to establish:

> a) the defendant made a representation as to a past or existing material fact;
> b) the representation must have been untrue;
> c) regardless of its actual belief, the defendant must have made the representations without any reasonable ground for believing it to be true;
> d) the representation must have been made with the intent to induce the plaintiff to rely on it;
> e) the plaintiff must have been unaware of the falsity of the representation; it must have acted in reliance upon the truth of the representation and it must have been justified in relying upon the representation;
> f) the plaintiff, as a result of its reliance, must sustain damage.

*Shelton v. Dep't of Pub. Health & Hum. Servs.*, 567 P.3d 285, 296 (Mont. 2025) (quoting *Morrow v. Bank of Am.*, 324 P.3d 1167 (Mont. 2014)).

Negligent misrepresentation is a claim grounded in fraud that must, in accordance with Rule 9(b), be pled "with particularity [regarding] the circumstances constituting fraud or mistake." *Deveraux v. Meadowlark of Billings LLC*, 2023 WL 2330311, *2 (D. Mont. Mar. 2, 2023) (quoting Fed. R. Civ. P. 9(b)). Accordingly, a claim for negligent misrepresentation must be specific enough to give the defendant notice of the particular misconduct that allegedly constitutes fraud. *Id.*; *see also United States v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1180 (9th Cir. 2016) ("the plaintiff must allege the who, what, when, where, and how of the misconduct charged, including what is false or misleading about a statement, and why it is false") (internal citations and quotations omitted).

17

Accordingly, Plaintiff must have pled all of the elements with sufficient particularity in order to properly state a claim for negligent misrepresentation.

Here, Plaintiff's negligent misrepresentation claim does not meet the standards of Rule 9(b). The factual allegations are broad and conclusory. Plaintiff alleges only that St. James "made misrepresentations, both orally and in writing, in connection with its Petition for Temporary Guardianship," and that "[t]hese misrepresentations included factual statements concerning Raquel's fitness, conduct, and decision-making as agent under the Power of Attorney." (Doc. 27 at ¶¶89, 90.) Plaintiff does not, however, specifically identify the statements St. James allegedly made, or allege what was false or misleading about them. Therefore, Plaintiff's claim that St. James is liable for negligent misrepresentation is not plead with sufficient particularity.

Further, Plaintiff has not plead facts to satisfy other elements of negligent misrepresentation. As set forth above, a claim for negligent misrepresentation requires the Plaintiff to show that the alleged misrepresentation "must have been made with the intent to induce *the plaintiff* to rely on it."[4] *Shelton*, 567 P.3d at 296

---

[4] Plaintiff mis-quotes *Shelton* as stating this element requires "the representation must have been made with the intent to induce the plaintiff *or others* to rely on it[.]" (Doc. 34 at 13 (emphasis added).) The phrase "or others" does not appear anywhere within the *Shelton* decision, and the Court has not found any other Montana Supreme Court opinion defining the tort of negligent misrepresentation to include representations "to others."

18

(emphasis added).  Plaintiff does not allege any facts tending to establish how St. James intended to induce *Plaintiff* to rely on the alleged misrepresentations about herself.  Moreover, Plaintiff does not allege any facts plausibly showing that she was "unaware of the falsity of the representation[s]" that St. James made about her fitness, conduct or decision-making as Juan's agent.  She also does not allege facts showing how she "acted in reliance upon the truth of the representation" and was "justified in relying upon the representation."  *Id.*

St. James further argues that Plaintiff's negligent misrepresentation claim is inactionable due to the "absolute litigation privilege."  Montana law recognizes that several types of publication are privileged and cannot constitute defamation, including statements made in judicial proceedings.  *See* Mont. Code Ann. § 27-1-804(2).  The Montana Supreme Court has not directly addressed whether this privilege extends to claims beyond defamation.  This district, however, has considered the issue and determined that it is likely the Montana Supreme Court would do so.  *See Spreadbury v. Bitterroot Public Library*, 2011 WL 4499030 (D. Mont. Sept. 27, 2011).

In *Spreadbury*, the court applied the litigation privilege to non-defamation tort claims that arose out of communications that were made in the course of judicial proceedings.  *Id.* at *3.  The court explained that the litigation privilege "would not be absolute if plaintiffs could simply call an allegation that is

19

essentially a defamation claim a different name and be allowed to plead it." *Id.*

The court further stated that if "a claim is based on the same acts and injury as a

defamation claim, extending the judicial proceedings privilege protects the judicial

process itself." *Id.*

Here, Plaintiff's negligent misrepresentation is based on alleged

misrepresentations St. James made in connection with the Petition for Temporary

Guardianship.  (Doc. 27 at ¶¶ 89-91.)  Accordingly, the claim is barred by the

litigation privilege.[5]

Because Plaintiff's negligent misrepresentation claim is precluded by the

litigation privilege, St. James' motion to dismiss will be granted with prejudice as

to Count VIII.

### e.    Intentional Infliction of Emotional Distress (Count IX)

Montana law recognizes an independent cause of action for infliction of

emotional distress "under circumstances where serious or severe emotional distress

---

[5] Plaintiff's claims for abuse of process and infliction of emotional distress are not precluded by the litigation privilege because they are not wholly based on communications St. James made during the Temporary Guardianship Proceedings. *See e.g. Getachew v. L&S Investments*, 2026 WL 851408, (D. Conn. Feb. 26, 2026) (holding litigation privilege does not apply to abuse of process claims that are sufficiently pled).  Plaintiff's abuse of process claim is based on the alleged improper use of the judicial system itself, rather than on St. James statements made during the course of that litigation.  Likewise, Plaintiff's intentional infliction of emotion distress claim is based partly on St. James' alleged misuse of the judicial proceedings.  (Doc. 27 at ¶¶ 99-100.)

20

to the plaintiff was the reasonably foreseeable consequence of the defendant's negligent or intentional act or omission." *Sacco v. High Country Ind. Press., Inc.*, 896 P.2d 411, 429 (Mont. 1995). Plaintiff must ultimately satisfy a high standard of evidentiary proof to succeed on her emotional distress claim. She will be required to establish that the emotional distress she suffered was "so severe that no reasonable person could be expected to endure it." *Feller v. First Interstate Bancsystem, Inc.*, 299 P.3d 338, 344 (Mont. 2013). The Montana Supreme Court has clarified, however, that "[i]n cases where there is physical manifestation of bodily harm resulting from emotional distress, such as PTSD, this bodily harm is sufficient evidence that the emotional distress suffered by the plaintiff is genuine and severe." *Henricksen v. State*, 84 P.3d 38, 55 (Mont. 2004). Quoting from the Restatement (Second) of Torts, § 46, comment k., the court explained "'[n]ormally, severe emotional distress is accompanied or followed by shock, illness, or other bodily harm, which *in itself* affords evidence that the distress is genuine and severe." *Id.* (emphasis in original.)

The Court will initially determine whether the threshold level of emotional distress can be found. *Sacco*, 896 P.2d at 425. If so, "it is for the jury to determine whether, on the evidence, it has in fact existed." *Id.* At this stage of the proceedings, however, Plaintiff need only allege facts to plausibly support the claim that she has suffered serious or severe emotional distress, and the Court must

draw all reasonable inferences from the facts in her favor.  *Gen. Conf. Corp. of Seventh–Day Adventists v. Seventh–Day Adventist Congregational Church*, 887 F.2d 228, 230 (9th Cir.1989).

In the First Amended Complaint, Plaintiff alleges that as a result of St. James' actions, she suffered "[a]nxiety, humiliation, and loss of professional reputation," "[m]ental anguish and emotional pain," and "[s]leep disturbances and physical manifestations of stress."   (Doc. 27 at ¶ 102.)  Plaintiff does not allege any additional facts regarding the duration or intensity of her emotional distress, which are important factors to be considered.  *See Feller*, 299 P.3d at 345. Nevertheless, the allegations that she experienced physical symptoms and manifestations of her severe emotional distress are sufficient at this early stage to state a plausible claim for infliction of emotional distress.  It remains to be determined, of course, whether Plaintiff can produce sufficient evidence to meet the high bar of severe or serious emotional distress to present a viable claim as this case proceeds.

Accordingly, St. James' motion to dismiss will be denied as to Count IX.

### f.      Leave to Amend

A court may grant a motion to dismiss with or without leave to amend.  The Ninth Circuit has made clear "[i]t is black-letter law that a district court must give plaintiffs at least one chance to amend a deficient complaint, absent a clear

showing that amendment would be futile." *Nat'l Council of La Raza v. Cegavske*, 800 F.3d 1032, 1041 (9th Cir. 2015). Plaintiff may be able to allege additional facts to support her claim in Count VI. Therefore, Plaintiff will be given thirty (30) days within which to file an amended complaint that cures the deficiencies outlined above. If no amended complaint is filed within that time, Count VI will be considered dismissed with prejudice, and the case will proceed on the remaining claims.

## IV.    CONCLUSION

Based on the foregoing, **IT IS HEREBY ORDERED** that St. James' Motion to Dismiss (Doc. 30) is **GRANTED in part, and DENIED in part**.

DATED this 27 day of July, 2026.

_____
TIMOTHY J. CAVAN
United States Magistrate Judge